**MOTLOW v. SOUTHERN HOLDING & SE-CURITIES CORPORATION et al.***

No. 10870.

Circuit Court of Appeals, Eighth Circuit.

April 14, 1938.

Patrick H. Cullen, of St. Louis, Mo. (Clem F. Storckman and Cullen Coil, both of St. Louis, Mo., on the brief), for appellant.

David A. Murphy, of Kansas City, Mo. (Charles A. Loughin, of New York City, and John T. Harding, R. C. Tucker, and John Murphy, all of Kansas City, Mo., on the brief), for appellees Home Ins. Co. and Home Indemnity Co.

Paul F. Plummer, of St. Louis, Mo. (Sam B. Jeffries and Arthur E. Simpson,

*Rehearing denied May 4, 1938.

both of St. Louis, Mo., on the brief), for appellee Louis H. Pink.

John S. Leahy, of St. Louis, Mo. (Kent V. Gay and William O'Herin, both of St. Louis, Mo., on the brief), for appellee Southern Holding & Securities Corporation.

Earl Susman, R. H. McRoberts, and E. W. Banister, all of St. Louis, Mo., for appellees Pasadena Realty Company and others.

Before STONE, SANBORN, and WOODROUGH, Circuit Judges.

SANBORN, Circuit Judge.

Lem Motlow, plaintiff in the court below, has appealed from a decree dismissing his suit in equity after a motion to dismiss his second amended bill of complaint had been sustained and after he had refused to plead further.

The plaintiff, as a creditor of the Southern Surety Company of New York, which had become insolvent and was in liquidation in the state of New York, brought this suit to set aside certain transfers alleged to have been made in fraud of creditors by the Southern Surety Company to Southern Holding & Securities Corporation, a creature of Home Insurance Company and Home Indemnity Company, and to recover from the three companies last named—which are defendants and are said to have conspired to bring about the fraudulent transfers—sufficient of the transferred assets to satisfy plaintiff's claim.

Pasadena Realty Company, successor to Carter Realty Company, Frazier-Davis Construction Company, J. F. Steinmeyer, Tower Grove Bank & Trust Company, trustee, and R. H. McRoberts, trustee, are defendants alleged to be in possession of some of the transferred assets, for the use and benefit of Southern Holding & Securities Corporation, Home Insurance Company, and Home Indemnity Company. Louis H. Pink, superintendent of insurance of the state of New York, as liquidator of the Southern Surety Company of New York, is also a defendant.

The suit was originally commenced June 1, 1934, in the circuit court of St. Louis county, Mo., without joining the superintendent of insurance of New York as a party defendant. It was thereafter removed to the federal court by nonresident defendants on the ground of diversity of citizenship and a separable controversy as to them.

On December 5, 1935, the court below ordered a dismissal of the bill for the reasons: (1) That the plaintiff was without capacity to maintain the suit; (2) that the court had no jurisdiction of the subject matter; and (3) that an indispensable party, the superintendent of insurance of the state of New York, had not been joined as a party defendant.

The plaintiff then filed an amended bill, in which the superintendent of insurance of the state of New York, as liquidator of the Southern Surety Company, was made a party defendant. The superintendent was served with process in the state of New York, in accordance with section 57 of the Judicial Code, 28 U.S.C. § 118, 28 U.S.C. A. § 118. He appeared specially and moved to set aside the service made upon him and for dismissal of the suit for want of jurisdiction of his person and of the subject matter. Other defendants moved for a dismissal of the bill for want of equity. The court sustained the motion to vacate the service of process upon the superintendent, and granted the motions to dismiss the amended bill for want of equity for the reasons which formed the basis for the dismissal of the original bill.

In substance, the bill of complaint, as finally amended, alleges that Motlow is a creditor of the Southern Surety Company who became such in the year 1923 and whose claim of $90,000 has been allowed in the liquidation proceeding now pending in the state of New York; that in 1930 the Southern Surety Company was a solvent going concern; that in that year the defendants Southern Holding & Securities Corporation, Home Insurance Company, and Home Indemnity Company "did unlawfully and willfully conspire, combine, confederate together to obtain without consideration the property of the Southern Surety Company of New York, with intent to enrich the said defendants and with the further intent to cheat, defraud, hinder and delay the creditors of said Southern Surety Company, including plaintiff"; that they procured the Southern Surety Company to transfer to Southern Securities & Holding Corporation assets of a value in excess of $3,500,000, thereby rendering the Southern Surety Company insolvent; that some of the assets so transferred are located in the Eastern

District of Missouri; that the transfers were made with knowledge of the superintendent of insurance of New York; "that on or about the 22nd day of March, 1932, upon the application of George S. Van Schaick, who was then, and for many years prior thereto [had been], Superintendent of Insurance of the State of New York, an order was entered in the Supreme Court of the State of New York, County of New York, that being a court of competent jurisdiction under the laws of said state, forfeiting, annulling and surrendering the corporate charter of Southern Surety Company of New York in accordance with the laws of the said state in such case made and provided"; that "said order directed and empowered the Superintendent of Insurance of the State of New York to take possession of the business, property, choses in action and accounts of the Southern Surety Company of New York and liquidate the same for the benefit of whom it may concern"; that the defendant Louis H. Pink succeeded George S. Van Schaick as superintendent of insurance of New York and as liquidator of the Southern Surety Company; that the superintendent of insurance of New York, as liquidator, has at all times failed, neglected, and refused to recover or to attempt to recover the assets of the Southern Surety Company which were wrongfully transferred to Southern Holding & Securities Corporation, although such liquidator has been fully aware at all times of the facts with reference thereto, and with knowledge of such facts has permitted the statutes of limitation to run against his cause of action for the recovery of such assets, and has abandoned all claim to such assets and to his right to recover them, and has, in violation of his trust, attempted to confirm the title of the defendants thereto. The prayer for relief is that the fraudulent transfers be set aside; that Southern Holding & Securities Corporation, Home Insurance Company, and Home Indemnity Company be required to turn over to the court a sufficient amount of the assets formerly belonging to Southern Surety Company to satisfy plaintiff's claim, and that, in case of their failure so to do, the plaintiff have judgment against those defendants for the amount of his claim.

■ It is not necessary to determine whether the plaintiff, as a general creditor whose claim has been allowed in the liquidation proceedings of the insolvent Southern Surety Company, has the same right to maintain this suit that a judgment creditor or a creditor with a lien would have. The bill of complaint shows that the Southern Surety Company is insolvent and has been placed in liquidation, and that the status of the plaintiff as a general creditor having a claim of $90,000 has been established. This would seem to bring the plaintiff within an exception to the general rule that only a creditor who has established the inadequacy of his legal remedies against his debtor, by obtaining a judgment at law and procuring an execution to be returned unsatisfied, may maintain a creditor's bill. See Case v. Beauregard, 101 U.S. 688, 690, 691, 25 L.Ed. 1004. The general rule to which reference has been made, its historical background, and the prerequisites to the maintenance of such a suit as this by a creditor, are discussed in the authorities in the footnote.[1] We shall assume, without deciding, that the fact that Motlow is a general creditor without a judgment and without a lien, did not preclude him from maintaining this suit.

Neither is it necessary to determine whether this suit is of such a nature that substituted service of process might be had under section 57 of the Judicial Code, 28 U.S.C. § 118, 28 U.S.C.A. § 118, upon nonresident defendants. It is by no means certain that such service of process could not be availed of in a suit of this general nature. Compare Mellen v. Moline Malleable Iron Works, 131 U.S. 352, 9 S.Ct. 781, 33 L.Ed. 178; Spellman v. Sullivan, D.C., 43 F.2d

[1] Story's Equity Jurisprudence, vol. 1, p. 453, §§ 474, 476, 494; Glenn on Liquidation, §§ 1 to 10, incl.; Clark's Principles of Equity, p. 527, § 396; Pomeroy's Equity Jurisprudence, 4th Ed., vol. 1, p. 341, § 222(4); 15 Corpus Juris 1388, § 16; 8 Ruling Case Law 30, § 34; Smith v. Ft. Scott, H. & W. Railroad Co., 99 U.S. 398, 25 L.Ed. 437; Case v. Beauregard, 101 U.S. 688, 25 L.Ed. 1004; Freedman's Savings & Trust Co. v. Earle, 110 U.S. 710, 4 S.Ct. 226, 28 L. Ed. 301; Scott v. Neely, 140 U.S. 106, 11 S.Ct. 712, 35 L.Ed. 358; Cates v. Allen, 149 U.S. 451, 13 S.Ct. 883, 37 L.Ed. 804; Hollins v. Brierfield Coal & Iron Co., 150 U.S. 371, 14 S.Ct. 127, 37 L.Ed. 1113; Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763; Shapiro v. Wilgus, 287 U.S. 348, 53 S.Ct. 142, 77 L.Ed. 355, 85 A.L.R. 128; Sharp v. Hawks, 8 Cir., 80 F.2d 731; Adler-Goldman Commission Co. v. Williams, D.C., 211 F. 530.

762, affirmed 2 Cir., 61 F.2d 787; Spellman v. Bankers Trust Co., 2 Cir., 69 F.2d 1016; Albert v. Bascom, D.C., 245 F. 149; Hultberg v. Anderson, C.C., 170 F. 657; and Canton Roll & Machine Co. v. Rolling Mill Co. of America, C.C., 155 F. 321; note 34, 28 U.S.C.A. § 118. We shall, therefore, assume that the substituted service of process upon the superintendent of insurance was valid service.

The plaintiff, while conceding that the liquidator has title to the cause of action which is asserted in the suit at bar and the right to sue to recover assets of the Southern Surety Company wrongfully transferred, contends that the allegations of the bill of complaint bring the plaintiff within an exception to the rule that a liquidator, under such circumstances, would alone have the right to bring such a suit. The exception contended for is "that if the persons [such as the liquidator] entitled to sue for said claim, through inactivity, negligence, or wrongful conduct, fail or refuse to make any effort to collect the debts or reclaim the property of the corporation, then creditors and stockholders are given the right to sue."

It is to be noted that the bill of complaint contains no allegation that the plaintiff ever made any demand upon the present liquidator, or his predecessor in office, that he bring a suit for the benefit of the estate of the Southern Surety Company to recover the assets alleged to have been wrongfully transferred and that such demand was refused; no allegation that plaintiff ever made any offer to the liquidator to commence such a suit at plaintiff's cost in the right of the liquidator or in plaintiff's own right in case the liquidator was unwilling to permit suit to be brought in his name; no allegation that plaintiff ever made any application to the court of New York in which the liquidation proceedings were instituted, for an order directing the liquidator to bring suit or for an order authorizing the plaintiff to bring suit on behalf of the liquidator or upon his own behalf; no al-

legation that he has ever applied to that court for an order requiring the liquidator to show cause why he should not commence such a suit or why the plaintiff himself should not be permitted to bring it; and no allegation that plaintiff has at any time or in any way called to the attention of that court the alleged derelictions of the liquidator upon which plaintiff now relies as establishing his right to maintain this suit.

The statutes of New York relative to the liquidation of insolvent insurance companies, Laws of New York, 1932, c. 191, as amended, see McKinney's Consolidated Laws of New York, c. 28, book 27, Insurance, §§ 400 to 428, inclusive are intended to and do furnish a comprehensive, economical, and efficient method for the winding up of the affairs of domestic insurance companies by the superintendent of insurance of New York for the benefit of all creditors. The liquidation is intrusted to the official of the state who should be best qualified by training and experience for that purpose. Liquidation is effected by an order of the Supreme Court of the state of New York. Sections 403, 404. Upon the entry of such an order the superintendent of insurance, as liquidator, becomes the statutory successor of the corporation and is vested by operation of law with title to all of its assets, including choses in action. Section 404, subd. 2. He is given the right to avoid fraudulent transfers and to recover property wrongfully transferred. Section 418, subd. 3. He is also given the right to sell or otherwise dispose of the real and personal property, or any part thereof, with the approval of the court. Section 421.[2]

It thus appears that the superintendent of insurance of the state of New York, as liquidator of an insolvent domestic insurance company, is not given an uncontrolled discretion over the administration of the estate of the insolvent or over the disposition of its assets, but that his acts are measurably subject to the direction, supervision, and control of the court entering the order of liquidation.

---

[2] **§ 421. *Sale or other disposition of assets and compromise of claims***

"The superintendent may, subject to the approval of the court, (a) sell or otherwise dispose of the real and personal property, or any part thereof, of an insurer against whom a proceeding has been brought under this article and (b) sell or compound all doubtful or uncollectible debts or claims owed by or owing to such insurer including claims based upon an assessment levied against a member of a mutual insurer, provided that whenever the amount of any such debt or claim owed by or owing to such insurer does not exceed two hundred dollars, the superintendent may compromise or compound the same upon such terms as he may deem for the best interests of said insurer without obtaining the approval of the court."

The Circuit Court of Appeals of the Second Circuit, in the case of Tolfree v. New York Title & Mortgage Co. et al., 72 F.2d 702, certiorari denied, 293 U.S. 619, 55 S.Ct. 216, 79 L.Ed. 707, has held that, by virtue of a similar order of court and article 11 of the New York Insurance Law, section 400 et seq., the superintendent of insurance became in effect a receiver under the supervision of the state court.

■ Whether the liquidator more nearly resembles a receiver than a trustee in bankruptcy (Glenn on Liquidation, pages 16, 17, 18), or "the successor to the corporation, and not a mere receiver" (Clark v. Williard, 292 U.S. 112, 120, 54 S.Ct. 615, 619, 78 L. Ed. 1160), or "a trustee under a voluntary general assignment for the benefit of creditors" (Clark v. Williard, supra, 292 U.S. 112, at page 122, 54 S.Ct. 615, 620, 78 L.Ed. 1160), we do not consider of controlling consequence in this case. Regardless of analogies, we are satisfied that an assertion that such a liquidator could, by virtue of his misconduct or neglect and without the knowledge, consent, or approval of the court in which the liquidation proceedings were pending, effect an abandonment of $3,500,000 of recoverable assets belonging in equity to the estate of an insolvent insurer intrusted to him for liquidation, must be rejected.

■■ A complete answer to the charge of abandonment by the liquidator of the cause of action here attempted to be asserted is found in section 421 of article 11, which prevents the liquidator from selling or otherwise disposing of the property or claims belonging to the estate, or any part thereof (except claims for $200 or less), without the approval of the court. Choses in action are personal property and are also claims, and abandonment is unquestionably a means of disposing of property. Abandonment is a question of intent, International News Service v. Associated Press, 248 U.S. 215, 240, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293; and the allegations of the bill of complaint fail to show any affirmative acts from which an intent to abandon, on the part of one whose intent would be effectual, might properly be inferred.

The plaintiff can, perhaps, argue that the allegations of the bill are sufficient to create the inference that a demand upon the liquidator to bring suit for the recovery of the assets wrongfully transferred would or might have been futile, but he cannot argue that they create any inference that an application to the court which has supervision of the liquidator for an order compelling him to sue or to permit the plaintiff to bring suit would have been of no avail.

■ Accepting the plaintiff's hypothesis that the right of the liquidator to sue for the recovery of assets transferred in fraud of creditors is not completely exclusive, and that abandonment by him of such right will enable a creditor to sue, we are convinced that the plaintiff's bill not only fails to show any effective abandonment by the liquidator of his cause of action and right to sue, but that it is also deficient in failing to show that the plaintiff has exhausted the remedies which were available to him in the liquidation proceedings pending in New York and in the court of New York which has supervision and control of such proceedings. Moss v. Goodhart, D.C., 209 F. 102; Swope v. Villard, C.C., 61 F. 417; Kirrane v. Boone, 334 Mo. 558, 66 S.W.2d 861; Jackson v. Stallings, 169 Ga. 176, 149 S.E. 902; Saunders v. Bank of Mecklenburg, 113 Va. 656, 75 S.E. 94; Isaac v. Marcus, 258 N.Y. 257, 179 N.E. 487; Dorland v. Fidelity Development Co., 104 Misc. 97, 171 N.Y.S. 1000; McTamany v. Day, 23 Idaho 95, 128 P. 563; Frederick v. McRae, 157 Minn. 366, 196 N.W. 270; Ham v. Norwood, 196 N.C. 762, 147 S.E. 291; Pallange v. Liberty State Bank et al., 216 Wis. 427, 256 N.W. 708, 97 A.L.R. 164. Compare Porter v. Sabin, 149 U.S. 473, 13 S.Ct. 1008, 37 L.Ed. 815; Klein v. Peter, 8 Cir., 284 F. 797, 29 A.L.R. 1497; Reagan v. Midland Packing Co., 8 Cir., 8 F.2d 954, 956.

■ Furthermore, we think there is no more reason for making the administration of the estate of an insolvent insurance company by a statutory liquidator under proceedings commenced in the court of a state, subject to the jurisdiction of other courts, than for making the administration of such an estate in the hands of an equity receiver appointed by a court, subject to the jurisdiction of other courts. The reasons for noninterference are the same in either case. Experience has demonstrated that, in order to secure an economical, efficient, and orderly liquidation and distribution of the assets of an insolvent corporation for the benefit of all creditors and stockholders, it is essential that the title, custody, and control of the assets be intrusted to a single management under the supervision of one court. Hence other courts, except when called upon by the court of primary juris-

diction for assistance, are excluded from participation. This should be particularly true as to proceedings for the liquidation of insolvent insurance companies, for the reasons adverted to by Mr. Justice Cardozo in Clark v. Williard, 292 U.S. 112, 123, 54 S.Ct. 615, 620, 78 L.Ed. 1160. See, also, Glenn on Liquidation, pages 409, 410, §§ 278, 279, 280.

In Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871, the right of the Department of Trade and Commerce of Nebraska to liquidate the Lion Bonding Company, a domestic insurance company of that state, in accordance with the statutes of Nebraska and the orders of a state court of Nebraska entered pursuant to such statutes, free from interference by other courts, was involved; and the Supreme Court applied the rule that "where a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts." 262 U.S. 77, 88, 89, 43 S.Ct. 480, 484, 67 L.Ed. 871.

In O'Neil v. Welch, 3 Cir., 245 F. 261, the right of the insurance commissioner of Pennsylvania to liquidate the Union Casualty Company of Pennsylvania pursuant to the statutes of that state was questioned. The court said, 245 F. 261, at page 269: "The act of the State in bringing suit was the exercise of a governmental power; the acts of the State court in pursuing a procedure established to insure the full accomplishment of that power stand for dominion over the entire subject matter in litigation, and subject the property of the corporation to its jurisdiction for the full purpose of the judicial proceeding, which includes its possession, liquidation and distribution. We are therefore of opinion that the State court acquired jurisdiction not only of the corporation but of its property upon the inception of the proceeding, and, being first to acquire jurisdiction, is entitled to retain it until the State has wrought its function and until the jurisdiction invoked has been exhausted."

In Tolfree v. New York Title & Mortgage Co., 2 Cir., 72 F.2d 702, already referred to, the court held that the superintendent of insurance, when authorized by a state court order to take possession of property of an insuring company, became, in effect, a receiver under the supervision of the state court, and that its property was in custodia legis. The court said, 72 F.2d 702,

at page 704: "In such circumstances, under established rules of law, the federal courts should not interfere with the possession of the state court. Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871; Harkin v. Brundage, 276 U.S. 36, 48 S.Ct. 268, 72 L.Ed. 457; Farmers' Loan & Trust Co. v. Lake Street Elevated Railroad Co., 177 U.S. 51, 61, 20 S.Ct. 564, 44 L.Ed. 667; O'Neil v. Welch (C.C.A.) 245 F. 261; People's Trust Co. v. United States (C.C.A.) 23 F.2d 381. We can see no essential difference between the general character of the statutes under which a department of a state was appointed to manage and liquidate property in Lion Bonding & Surety Co. v. Karatz and O'Neil v. Welch, supra, and the statutes involved in the present case, and we hold that here the District Court had no right to intervene."

While it may be doubted that the assets of an insolvent domestic insurance company taken over by the superintendent of insurance of New York for liquidation pursuant to the statutes of that state and an order of liquidation, are in custodia legis in the sense that they are in the possession and control of an officer of the court making the order, there can be no doubt that they are, under the laws of the state and the order of the court entered pursuant thereto, in the custody of a statutory successor of the corporation for purposes of liquidation. Whether assets are in the custody of an administrative officer of the state who is amenable to the direction and control of a court of the state, or whether they are in the custody of a judicial officer selected by the court and who is subject to removal by it, should, we think, make no difference. What the situation would be were such assets in the hands of an officer of the state who had an uncontrolled discretion as to their liquidation and disposition and over whose acts or neglects no local court had any jurisdiction or control, we shall not attempt to decide. We are convinced that the title to the cause of action which the plaintiff attempts to assert was vested, by the order of liquidation of the Supreme Court of New York and by the statutes of the state of New York, in the superintendent of insurance of that state, that he still has title thereto, and that the allegations of the plaintiff's bill were insufficient to entitle the plaintiff to maintain this suit and to confer upon the court below any jurisdiction of the subject matter.

The decree is affirmed.